1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MIGUEL RODRIGUEZ, et al.,                    CASE NO. CV F 10-1370 LJO MJS

12              Plaintiffs,                        **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                                                   **MOTION TO DISMISS**
13        vs.                                      (Doc. 12.)

14   CITY OF MODESTO, et al,

15              Defendants.
     _____/

16

17                              **INTRODUCTION**

18        Defendants City of Modesto ("City") and nine City peace officers[1] seek to dismiss plaintiffs'[2]

19   unlawful arrest and excessive force claims in the absence of sufficient legal grounds and factual

20   allegations.  Plaintiffs "concede that Defendants' arguments have merit" and seek to file an amended

21   complaint to "correct the defects appearing on the face of the original complaint."  This Court considered

22   defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the December 6, 2010

23

24        [1]      The defendant City peace officers are City Police Chief Roy Wasden ("Chief Wasden"), Lieutenant Ron
     Cloward ("Lt. Cloward"), officers John Buehler ("Officer Buehler"), Jeff Sprueill ("Officer Spruiell"), James Murphy
25   ("Officer Murphy"), Casey Graham ("Officer Graham"), Florencio Costales ("Officer Costales"), Ronny Ziya ("Officer
     Ziya"), and Mark Fontes ("Officer Fontes").  The City and the nine defendant City peace officers will be referred to
26   collectively as "defendants."  The eight defendant City line officers (excluding Chief Wasden) will be referred to collectively
     as the defendant officers.
27
          [2]      Plaintiffs are Miguel Rodriguez ("Mr. Rodriguez"), Charisse Fernandez ("Ms. Fernandez"), and Adrian
28   Alizaga ("Mr. Alizaga") and will be referred to collectively as "plaintiffs."

                                          1

hearing, pursuant to Local Rule 230(g).  This Court DISMISSES plaintiffs' claims and GRANTS plaintiffs leave to amend to the extent delineated below.

## BACKGROUND[3]

### Plaintiffs' Arrests

On February 8, 2009 at around 1 a.m., plaintiffs gathered at Mr. Alizaga's Modesto home to celebrate his birthday.  A police officer knocked at the door, and Mr. Alizaga's dog ran out when he opened the door.  As Mr. Alizaga tried to retrieve the dog, Officers Spruiell and Ziya grabbed Mr. Alizaga, threw him to the ground and handcuffed him "for no apparent reason."  Officers Spruiell and Ziya struck Mr. Alizaga with their batons.  Mr. Alizaga was booked on charges of resisting arrest, a misdemeanor.

Mr. Rodriguez came out of the house, observed Mr. Alizaga's arrest, and wanted to find out the reason.  Mr. Rodriguez stood peaceably on the home's front lawn and attempted to learn from police why Mr. Alizaga was arrested.  Officers Ziya, Fontes and Murphy arrested Mr. Rodriguez without having observed him commit a criminal offense.  During the arrest, Officer Fontes shot Mr. Rodriguez with his Taser, and Officer Ziya struck  Mr. Rodriguez' arm with his baton.  Officer Murphy gave the "bite command" to his K-9 which bit Mr. Rodriguez.

When Mr. Rodriguez was handcuffed and walked to a patrol car, unidentified officer Doe Defendant No. 1 put a shotgun to Mr. Rodriguez' back and banged his head against the roof of the patrol car.  Doe Defendant No. 1 attempted to break Mr. Rodriguez' bad leg after Mr. Rodriguez had alerted the officer of a prior injury to the leg.  Mr. Rodriguez screamed: "What are you doing to me?  I have a daughter!"  Doe Defendant No. 1 responded: "Fuck your daughter, you piece of shit!"

The police threw Mr. Rodriguez "roughly" in the back of a patrol car to injure his bad leg.  The police took Mr. Rodriguez to a hospital for medical clearance and then to jail.  Mr. Rodriguez was released the following morning at about 1 a.m. with a citation for resisting arrest, a misdemeanor.

When the police arrested Mr. Alizaga and Mr. Rodriguez, Ms. Fernandez came outside and observed Mr. Alizaga and Mr. Rodriguez being beaten.  As Ms. Fernandez stood on the home's porch

---

[3]     The factual recitation is derived generally from plaintiffs' complaint ("complaint"), the target of defendants' challenges.

1  and watched, Officer Buehler grabbed Ms. Fernandez, threw her to the ground, and handcuffed her for

2  "no apparent reason."  Unidentified officer Doe Defendant No. 2 struck Ms. Fernandez several times

3  with his club when Ms. Fernandez lay face-down on the front lawn, handcuffed and screaming for help.

4  Officer Souza[4] held a police dog next to Ms. Fernandez' head for no reason.  Police placed Ms.

5  Fernandez in a patrol car's back seat and ignored her repeated requests for an explanation.  Ms.

6  Fernandez was transported to a hospital for medical clearance, was taken to jail, was charged with

7  resisting arrest, and released with a citation for resisting arrest, a misdemeanor.

8       Lt. Cloward was the "ranking officer" on the scene and did nothing to restrain the unlawful

9  behavior of officers under his command.

10                                   **Plaintiffs' Injuries**

11       Plaintiffs claim to have suffered multiple contusions and abrasions and emotional distress.  Ms.

12  Fernandez further claims cervical strain.

13                                   **Plaintiffs' Claims**

14       The complaint alleges 42 U.S.C. § 1983 ("section 1983") claims for unreasonable seizure and

15  failure to adequately train, supervise and discipline officers (collectively the "section 1983 claims").  The

16  complaint further alleges tort claims of assault and battery and false arrest/false imprisonment.  These

17  claims will be discussed in greater detail below.  The complaint seeks to recover compensatory and

18  punitive damages and attorney fees.

19                           **Plaintiffs' Nolo Contendere Pleas**

20       On February 10, 2009, a misdemeanor criminal complaint was filed to charge each plaintiff with

21  a count of violation of California Penal Code section 148(a) (restricting, delaying or obstructing peace

22  officer).  Plaintiffs entered nolo contendere pleas to charges against them.

23                                     **DISCUSSION**

24                     **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

25       Defendants raise several F.R.Civ.P. 12(b)(6) challenges to the complaint's section 1983 and tort

26  claims.

27  _____

28       [4]      The complaint does not name "Officer Souza" as a defendant.

                                          3

1    A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

2 forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

3 of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

4 whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

5 support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

6 *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

7 there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

8 cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

9 *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

10    In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

11 most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

12 whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

13 *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

14 true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

15 *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

16 "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

17 *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can

18 prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

19 been alleged."  *Associated General Contractors of California, Inc. v. California State Council of*

20 *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

21 "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon*

22 *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

23    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

24 allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

25 than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

26 *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

27 Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

28 plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing*

1   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either

2   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

3   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.

4   Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

5       In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

6   explained:

7           To survive a motion to dismiss, a complaint must contain sufficient factual
        matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
8       claim has facial plausibility when the plaintiff pleads factual content that allows the court
        to draw the reasonable inference that the defendant is liable for the misconduct alleged.
9       . . . The plausibility standard is not akin to a "probability requirement," but it asks for
        more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

10

11       After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

12   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

13   content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret

14   Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

15       The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

16           First, the tenet that a court must accept as true all of the allegations contained in
        a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
17      a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
        only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
18      . Determining whether a complaint states a plausible claim for relief will . . . be a
        context-specific task that requires the reviewing court to draw on its judicial experience
19      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
        more than the mere possibility of misconduct, the complaint has alleged – but it has not
20      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

21           In keeping with these principles a court considering a motion to dismiss can
        choose to begin by identifying pleadings that, because they are no more than conclusions,
22      are not entitled to the assumption of truth. While legal conclusions can provide the
        framework of a complaint, they must be supported by factual allegations. When there are
23      well-pleaded factual allegations, a court should assume their veracity and then determine
        whether they plausibly give rise to an entitlement to relief.

24

25   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

26       For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

27   complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

28   Nonetheless, "judicial notice may be taken of a fact to show that a complaint does not state a cause of

1  action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd*., 245 F.2d 67, 70 (9th Cir. 1956); *see*

2  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take

3  judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the

4  motion to dismiss.  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

5      With these standards in mind, this Court turns to defendants' challenges to plaintiffs' claims.

6                                        **Official Capacity**

7      The complaint names Chief Wasden and the defendant officers in their "official capacities."

8  Defendants argue that pursuing Chief Wasden and the defendant officers in their official capacities in

9  the section 1983 claims is "procedurally improper" given that the complaint also names the City as "their

10  employing public entity."

11      Plaintiffs concede that "the claims against the individual officers should be brought against them

12  in their individual capacities and not in their official capacities."

13      Official-capacity suits "generally represent only another way of pleading an action against an

14  entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

15  690, n. 55, 98 S.Ct. 2018 (1978).  The U.S. Supreme Court has further explained:

16          Personal-capacity suits seek to impose personal liability upon a government
       official for actions he takes under color of state law. . . .  Official-capacity suits, in
17      contrast, "generally represent only another way of pleading an action against an entity of
       which an officer is an agent." . . . As long as the government entity receives notice and
18      an opportunity to respond, an official-capacity suit is, in all respects other than name, to
       be treated as a suit against the entity.

19

20  *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985) (citations omitted).

21      An official capacity action is not against the public employee personally, "for the real party in

22  interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.  "An official capacity suit against a

23  municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. Los*

24  *Angeles County Sheriff,* 533 F.3d 780, 799 (9th Cir. 2008).

25      Local government officials sued in their official capacities are "persons" under section 1983 in

26  cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98

27  S.Ct. 2018.  "For this reason, when both an officer and the local government entity are named in a

28  lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may

                                                    6

be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)).  "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

 "[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204.  As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

### *The Defendant Officers*

Defendants contend that the defendant officers are not subject to an official capacity claim under section 1983 in that they do not hold City police department positions to cloak them as "a governmentally authorized decision maker."

### *Chief Wasden*

Defendants characterize an official capacity claim against Chief Wasden as "redundant to the *Monell* claim against the defendant City because Chief Wasden was employed as the Chief of Police."  "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Bulter v. Elle*, 281 F.3d 1014, 1023, n. 8 (9th Cir. 2002).

Defendants are correct, and plaintiffs concede, that Chief Wasden and the defendant officers are subject to section 1983 claims in their individual capacities only.  As such, dismissal of the section 1983 claims in Chief Wasden and the defendant officers' official capacities is warranted.

### **Officers Graham And Costales**

Defendants seek Officers Graham and Costales dismissal in that their names merely appear in the complaint's caption and paragraph identifying the defendant officers and the complaint "fails to reveal a single factual allegation" against them.  Defendants fault the complaint's absence of facts "which constitute any actionable claim against either of them."

1   In their opposition papers, plaintiffs fail to address Officers Graham and Costales.  As such, this

2   Court is unclear whether plaintiffs seek to amend to add allegations as to them.  In an abundance of

3   cause, Officers Graham and Costales are dismissed without prejudice.

4   **Fourteenth Amendment Claim**

5   The complaint's first section 1983 claim references the Fourteenth Amendment in its heading

6   and alleges:

7       1.   Plaintiffs "were arrested without having committed any offense in the presence of a

8            police officer and without the police having probable cause to believe they had

9            committed any felony offense"; and

10      2.   The defendant officers used unreasonable force to subject plaintiffs to "unreasonable

11           seizure" to violate the "Fourth and **Fourteenth** Amendments."  (Bold added.)

12  Defendants contend that the complaint lacks a Fourteenth Amendment claim cognizable under

13  section 1983 in that plaintiffs' excessive force claims invoke the Fourth Amendment.

14  "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

15  acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

16  claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

17  States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

18  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

19  vindicating federal rights elsewhere conferred.'" *Albright*, 510 U.S. at 271, 114 S.Ct. 807, 811 (quoting

20  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other

21  federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges,

22  or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042

23  (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry

24  in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the

25  Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step

26  in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v.*

27  *Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of

28  rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*,

8

443 U.S. at 146, 99 S.Ct. 2689.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 813 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989)). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219 (1997).

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989), the U.S. Supreme Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's reasonableness standard:

> [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Defendants argue that plaintiffs' excessive force claim invokes the Fourth Amendment to warrant its dismissal to the extent it alleges a "violation of substantive due process rights."

Plaintiffs explain the Fourteenth Amendment reference "merely expresses the fact that the Fourth Amendment is made applicable against local law enforcement officials via that Fourteenth Amendment." Plaintiffs acknowledge that they do not intend to pursue a claim for violation of Fourteenth Amendment due process and "request that the claim be read simply as a Fourth Amendment claim."

Plaintiffs request is granted in that the complaint's first section 1983 claim is dismissed to the extent it attempts to allege a Fourteenth Amendment violation.

## **False Arrest**

Defendants argue that plaintiffs' nolo contendere pleas bar plaintiffs' false arrest claims.

In *Heck v. Humphrey*, 512 U.S. 477, 487-488, 114 S.Ct. 2364 (1994), the U.S. Supreme Court explained:

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

"*Heck* says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938 (2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)).  *Heck* objectives include "preserving consistency and finality, and preventing 'a collateral attack on [a] conviction through the vehicle of a civil suit.'" *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (quoting *Heck*, 512 U.S. at 484-485, 114 S.Ct. 2364).  "[F]or purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty."  *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D. Cal. 1999).

Defendants argue that *Heck* bars plaintiffs' section 1983 false arrest claim in that a judgment favorable to plaintiffs on such claim would necessarily imply the invalidity of their convictions arising from their nolo contendere pleas.  Defendants note that to prevail on a section 1983 false arrest claim, each plaintiff would need to "demonstrate that there was no probable cause" for arrest.  Defendants continue that plaintiffs lack a section 1983 false arrest claim in the absence of allegations that their convictions have been reversed on appeal, expunged by executive order, invalidated by a state tribunal or called into question by a federal writ of habeas corpus.

Plaintiffs agree that *Heck* bars their section 1983 false arrest claims but contend their excessive force claim is not so barred in that plaintiffs' convictions "merely establish that the police had probable cause to arrest Plaintiffs, not that the force they used in making the arrests was reasonable."

Plaintiffs' section 1983 false arrest claim falls squarely under *Heck*'s bar in that plaintiffs seek

1  to recover for alleged unconstitutional detentions which have neither been reversed, expunged, declared

2  invalid nor call into question.  A successful false arrest claim here would necessarily imply the invalidity

3  of plaintiffs' nolo contendere pleas, which are inconsistent with the defendant officers' alleged wrongs

4  subject to the complaint's section 1983 false arrest claim.  Plaintiffs are correct that *Heck* bars only their

5  false arrest claim, not their excessive force claim.

6  ### ***Monell* Liability**

7  The complaint's second section 1983 claim is entitled "Failure to Adequately Train, Supervise

8  and Discipline Officers – 14th Amendment" and alleges that the City and Chief Wasden:

9      1.    "[H]ad a statutory duty to adequately train their police officers in the use of force, and

10          specifically in the proper use of police dogs, tasers and batons"; and

11      2.    "[W]ere deliberately indifferent to their duties to properly train, supervise and discipline

12          Modesto police officers."

13  Defendants characterize the claim as seeking *Monell* liability against the City and as an official

14  capacity claim against Chief Wasden to warrant is dismissal against Chief Wasden on grounds discussed

15  above.  Defendants fault the claim's failure to allege the defendant officers' deprivation of rights under

16  the Fourteenth Amendment and in turn facts to establish the City's Fourteenth Amendment violation to

17  invoke *Monell* liability.

18  A local government unit may not be held liable for the acts of its employees under a respondeat

19  superior theory.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

20  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

21  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "Federal case law

22  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

23  1983."  *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

24  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

25  result of a 'policy or custom' of that state actor."  *African American Contractors*, 96 F.3d at 1215.

26  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S.

27  at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation."

28  *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

1   (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its

2   employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

3   constitutional violation was the product of a policy or custom of the local governmental unit.  *City of*

4   *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

5   U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government,

6   a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

7   policymakers) and the requisite causation (the policy or custom as the "moving force" behind the

8   constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296

9   F.3d 531, 537 (7th Cir. 2002).

10      "Liability may attach to a municipality only where the municipality itself causes the

11   constitutional violation through 'execution of a government's policy or custom, whether made by its

12   lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' " *Ulrich v.*

13   *City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir.2002) (quoting *Monell*, 436 U.S. at 694,

14   98 S.Ct. 2018). A municipal "policy" exists when "a deliberate choice to follow a course of action is

15   made from among various alternatives by the official or officials responsible for establishing final policy

16   with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292; *Fairley v.*

17   *Luman*, 281 F.3d 913, 918 (9th Cir.) (per curiam), *cert. denied*, 537 U.S. 1044, 123 S.Ct. 659 (2002).

18      A municipal policy or custom is established by showing: (1)"a longstanding practice or custom

19   which constitutes the 'standard operating procedure' of the local government entity;" (2) "that the

20   decision-making official was, as a matter of state law, a final policymaking authority whose edicts or

21   acts may fairly be said to represent official policy in the area of decision;" or (3) "that an official with

22   final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

23   *Ulrich*, 308 F.3d at 984-85 (internal quotation marks and citations omitted).

24      Defendants argue that a section 1983 claim that the City failed to adequately train, supervise and

25   discipline police officers depends on whether City final policymakers "have caused the deprivation of

26   rights at issue by policies which affirmatively command that it occur, . . . or by acquiescence in a

27   longstanding practice or custom which constitutes the 'standard operating procedure' of the local

28   governmental entity." *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702

1   (1989) (citations omitted).

2   "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure

3   to train amounts to deliberate indifference to the rights of persons with whom the police come in

4   contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989). "Only where a

5   municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference'

6   to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom'

7   that is actionable under § 1983." *Harris*, 489 U.S. at 389, 109 S.Ct. 1197. Moreover, "it is therefore

8   difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate

9   training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice

10  – that is, proof that the policymakers deliberately chose a training program which would prove

11  inadequate. And in the second place, some limitation must be placed on establishing municipal liability

12  through policies that are not themselves unconstitutional . . ." *City of Oklahoma City v. Tuttle*, 471 U.S.

13  808, 823, 105 S.Ct. 2427 (1985).

14  The U.S. Supreme Court has elaborated on an inadequate training claim:

15  But it may happen that in light of the duties assigned to specific officers or employees
    the need for more or different training is so obvious, and the inadequacy so likely to
16  result in the violation of constitutional rights, that the policymakers of the city can
    reasonably be said to have been deliberately indifferent to the need. In that event, the
17  failure to provide proper training may fairly be said to represent a policy for which the
    city is responsible, and for which the city may be held liable if it actually causes injury.

18
    In resolving the issue of a city's liability, the focus must be on adequacy of the
19  training program in relation to the tasks the particular officers must perform. That a
    particular officer may be unsatisfactorily trained will not alone suffice to fasten liability
20  on the city, for the officer's shortcomings may have resulted from factors other than a
    faulty training program.

21

22  *Harris*, 489 U.S. at 390-391, 109 S.Ct. 1197 (footnotes omitted).

23  As to failure to train employees, the Ninth Circuit has explained:

24  The custom or policy of inaction, however, must be the result of a "conscious," . . . or
    "'deliberate choice to follow a course of action . . . made from among various
25  alternatives by the official or officials responsible for establishing final policy with
    respect to the subject matter in question.'"

26
                . . .
27
                A local governmental entity's failure to train its employees can also create § 1983
28  liability where the failure to train "amounts to deliberate indifference to the rights of

13

persons" with whom those employees are likely to come into contact. . . . "[F]or liability to attach in this circumstance the identified deficiency in a [local governmental entity's] training program must be closely related to the ultimate injury." . . . In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees. . . .

*Lee,* 250 F.3d at 681 (citations omitted.)

A section 1983 plaintiff alleging a policy of failure to train peace officers must show: (1) he/she was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons' with whom its peace officers are likely to come into contact; and (3) his/her constitutional injury would have been avoided had the local government unit properly trained those officers. *Blankenhorn,* 485 F.3d at 463. "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant – a much lower standard of fault than deliberate indifference.'" *Blankenhorn,* 485 F.3d at 484-485 (quoting *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir. 1994)).

In short, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Harris,* 489 U.S. at 391, 109 S.Ct. 1197.

The complaint broadly alleges deliberate indifference to train police officers in "proper use of police dogs, tasers and batons." The complaint lacks factual allegations of deliberate indifference, that is, a conscious choice to pursue an inadequate training program. The complaint fails to allege facts to demonstrate an obvious need for more or different training. At best, the complaint raises inferences that individual officers may have been inadequately trained. Plaintiffs acknowledge the second 1983 claim "is an imperfect attempt to state a *Monell* claim." This Court agrees. The complaint does not even allege that plaintiff's injuries would have been avoided had different training been employed. The section 1983 failure to adequately train claim is insufficiently pled to warrant its dismissal without prejudice and subject to an attempt to amend consistent with the above *Monell* principles.

### State Tort Claims

The complaint's third claim alleges that defendants "committed the torts of assault and battery against Plaintiffs." The complaint's fourth claim alleges that defendants falsely arrested plaintiffs "without having witnessed any of them commit any criminal offense and without probable cause to

believe that any of them had committed any felony offense."

Defendants fault the complaint's failure to allege compliance with claim filing requirements of the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., or facts to excuse Claims Act requirements.

The Claims Act describes the specific steps which must be taken before a civil action for money or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224 (1978). The Claims Act requires timely filing of a proper claim as condition precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." California Government Code section 911.4(a) permits a "written application" to a public entity for leave to present an untimely claim. California Government Code section 911.4(b) requires such application "within a reasonable time not to exceed one year after the accrual of the action."

The claims procedures applicable to actions against public employees are the same for actions against public entities. Cal. Gov. Code, §§ 950-950.6. Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer [or dismissal] for failure to state a cause of action." *State v. Superior Court,* 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th at 1243, 13 Cal.Rptr.3d at 534. "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against either the employee or the public entity." *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

15

1   Plaintiffs attribute as a drafting "oversight" failure to allege Claims Act compliance.  Plaintiffs

2   claim that they complied with Claims Act filing requirements.  Plaintiffs are granted an attempt to allege

3   their compliance.

4                                    **CONCLUSION AND ORDER**

5   For the reasons discussed above, this Court:

6   1.   DISMISSES with prejudice the section 1983 claims against Chief Wasden and the

7        defendant officers in their official capacities and PERMITS the section 1983 claims to

8        proceed against Chief Wasden and the defendant officers in their individual capacities

9        only;

10  2.   DISMISSES without prejudice this action against Officers Graham and Costales;

11  3.   DISMISSES with prejudice the first section 1983 claim only to the extent based on a

12       Fourteenth Amendment violation and unlawful or false arrest;

13  4.   DISMISSES without prejudice and with leave to amend the second section 1983 *Monell*

14       claim;

15  5.   DISMISSES without prejudice and with leave to amend the assault and battery and false

16       arrest/false imprisonment claims based on California law;

17  6.   ORDERS plaintiffs, no later than December 10, 2010, to file a first amended complaint

18       consistent with this order; and

19  7.   ORDERS defendants, no later than December 28, 2010 to file a response to plaintiffs'

20       first amended complaint.

21  IT IS SO ORDERED.

22  **Dated:    November 23, 2010            /s/ Lawrence J. O'Neill**
                                      UNITED STATES DISTRICT JUDGE

16