IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RODRIGUEZ, et al., | CASE NO. CV F 10-1370 LJO MJS |
| Plaintiffs, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS AMENDED CLAIMS** |
| vs. | |
| CITY OF MODESTO, et al, | |
| Defendants. / | |

## INTRODUCTION

Defendants City of Modesto ("City") and eight City peace officers[1] seek to dismiss plaintiffs'[2] excessive force, unlawful arrest, *Monell* and related claims as "defective" in the absence of sufficient legal grounds and factual allegations. Plaintiffs filed no timely papers to oppose dismissal of their claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the January 19, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court DISMISSES plaintiffs' claims.

---

[1] The defendant City peace officers are City Police Chief Roy Wasden ("Chief Wasden"), Lieutenant Ron Cloward ("Lt. Cloward"), Sergeant John Buehler ("Sgt. Buehler"), and officers Jeff Spruiell ("Officer Spruiell"), James Murphy ("Officer Murphy"), Ronald Ziya ("Officer Ziya"), Mark Fontes ("Officer Fontes") and Kalani Souza ("Officer Souza"). The City and the eight defendant City peace officers will be referred to collectively as "defendants."

[2] Plaintiffs are Miguel Rodriguez ("Mr. Rodriguez"), Charisse Fernandez ("Ms. Fernandez"), and Adrian Alizaga ("Mr. Alizaga") and will be referred to collectively as "plaintiffs."

1

**BACKGROUND**[3]

**Mr. Alizaga's Arrest**

On February 8, 2009 at around 1 a.m., plaintiffs gathered at Mr. Alizaga's Modesto home to celebrate his birthday. A police officer knocked at the door, and Mr. Alizaga's dog ran out when he opened the door. As Mr. Alizaga tried to retrieve the dog, Officers Spruiell and Ziya grabbed Mr. Alizaga, threw him to the ground and handcuffed him "for no apparent reason." Officers Spruiell and Ziya struck Mr. Alizaga with their batons when Mr. Alizaga was on the ground. Mr. Alizaga was booked on charges of resisting arrest, a misdemeanor.

**Mr. Rodriguez' Arrest**

Mr. Rodriguez came out of the house, observed Mr. Alizaga's arrest, and wanted to find out the reason. Mr. Rodriguez stood peaceably on the home's front lawn and attempted to learn from police why Mr. Alizaga had been arrested. Officers Ziya, Fontes and Murphy arrested Mr. Rodriguez without having observed him commit a criminal offense. During the arrest, Officer Fontes shot Mr. Rodriguez with his Taser several times, and Officer Ziya struck Mr. Rodriguez' arm with his baton. Officer Murphy gave the "bite command" to his K-9 which bit Mr. Rodriguez, who never struck or attempted to strike the officers.

When Mr. Rodriguez was handcuffed and walked to a patrol car, unidentified officer Doe Defendant No. 1 put a shotgun to Mr. Rodriguez' back and banged his head against the roof of the patrol car. Doe Defendant No. 1 attempted to break Mr. Rodriguez' bad leg after Mr. Rodriguez had alerted the officer of a prior injury to the leg. Mr. Rodriguez screamed: "What are you doing to me? I have a daughter!" Doe Defendant No. 1 responded: "Fuck your daughter, you piece of shit!"

The police threw Mr. Rodriguez in the back of a patrol car to injure his bad leg. The police took Mr. Rodriguez to a hospital for medical clearance and then to jail. Mr. Rodriguez was released the following morning at about 1 a.m. with a citation for resisting arrest, a misdemeanor.

**Ms. Fernandez' Arrest**

When the police arrested Mr. Alizaga and Mr. Rodriguez, Ms. Fernandez came outside and

---

[3] The factual recitation is derived generally from plaintiffs' First Amended Complaint ("FAC"), the target of defendants' challenges.

2

observed Mr. Alizaga and Mr. Rodriguez being beaten.  As Ms. Fernandez stood on the home's porch and watched, Sgt. Buehler grabbed Ms. Fernandez, threw her to the ground, and handcuffed her for "no apparent reason."  Unidentified officer Doe Defendant No. 2 struck Ms. Fernandez several times with his club when Ms. Fernandez lay face-down on the front lawn, handcuffed and screaming for help. Officer Souza held a police dog next to Ms. Fernandez' head for no reason.  Police placed Ms. Fernandez in a patrol car's back seat and ignored her repeated requests for an explanation.  The police transported Ms. Fernandez to an airport parking log where no female officer was present.  Ms. Fernandez feared "the police would sexually assault her."  Ms. Fernandez was transported to a hospital for medical clearance, was taken to jail, was charged with resisting arrest, and released with a citation for resisting arrest, a misdemeanor.

Lt. Cloward was the "ranking officer" on the scene and did nothing to restrain the unlawful behavior of officers under his command.

## **Plaintiffs' Injuries**

Plaintiffs claim to have suffered multiple contusions and abrasions and emotional distress.  Ms. Fernandez further claims cervical strain.

## **Plaintiffs' Claims**

The complaint alleges 42 U.S.C. § 1983 ("section 1983") claims for excessive force and failure adequately to discipline and supervise officers (collectively the "section 1983 claims").  The complaint further alleges tort claims of battery and false arrest and violations of California Civil Code sections 51.7 and 52.1 (collectively the "state law claims").  These claims will be discussed in greater detail below. The complaint seeks to recover compensatory damages and attorney fees.

## **Plaintiffs' Nolo Contendere Pleas**

On February 10, 2009, a misdemeanor criminal complaint was filed in Stanislaus County Superior Court to charge each plaintiff with a count of violation of California Penal Code section 148(a) (restricting, delaying or obstructing peace officer) ("section 148(a)").  The criminal complaint accused:

1. Mr. Alizaga of wilfully and unlawfully resisting, obstructing and delaying Officer Spruiell;

2. Ms. Fernandez of wilfully and unlawfully resisting, obstructing and delaying Sgt.

3

1 | Buehler and Officer Fontes; and

2 | 3. Mr. Rodriguez of wilfully and unlawfully resisting, obstructing and delaying Officer
3 | Murphy.

Plaintiffs entered nolo contendere pleas to charges against them and were convicted subject to their pleas.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants seek to dismiss plaintiffs' claims in that the FAC "is defective on its face" and "fails to state facts sufficient to constitute any claim against the defendants."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State*

*Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer

5

> more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

With these standards in mind, this Court turns to defendants' challenges to plaintiffs' claims.

**Excessive Force**

The FAC's (first) section 1983 claim alleges that Sgt. Buehler, Officer Souza and Doe Defendant No. 1 "used unreasonable force when arresting" Ms. Fernandez to violate the Fourth Amendment. The FAC's (second) section 1983 claim alleges that Officers Murphy, Fontes and Ziya "used unreasonable force when arresting" Mr. Rodriguez to violate the Fourth Amendment.

Defendants argue that Ms. Fernandez and Mr. Rodriguez' nolo contendere pleas and resulting convictions bar their excessive force claims.

In *Heck v. Humphrey*, 512 U.S. 477, 487-488, 114 S.Ct. 2364 (1994), the U.S. Supreme Court explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the

>plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

"*Heck* says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938 (2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)). *Heck* objectives include "preserving consistency and finality, and preventing 'a collateral attack on [a] conviction through the vehicle of a civil suit.'" *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (quoting *Heck*, 512 U.S. at 484-485, 114 S.Ct. 2364). "[F]or purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty." *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D. Cal. 1999).

Defendants argue that *Heck* bars Ms. Fernandez or Mr. Rodriguez' excessive force claims in that success on the claims would necessarily imply invalidity of their convictions. Defendants explain that a valid section 148(a) conviction requires the criminal defendant to have "resisted, delay, or obstructed" a police officer's lawful exercise of duties.

"The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C.*, 95 Cal.App.4th 1325, 1329, 116 Cal.Rptr.2d 21 (2002) (citations omitted). "[I]f a defendant is charged with violating section 148 and the arrest is found to be unlawful, a defendant cannot be convicted of that section." *People v. White*, 101 Cal.App.3d 161, 166, 161 Cal.Rptr. 541 (1980) (if the jurors "found the arrest was made with excessive force, the arrest was unlawful and they should find the defendant not guilty of those charges which required the officer to be lawfully engaged in the performance of his duties").

In *Heck*, 512 U.S. at 487, n. 6, 114 S.Ct. 2364, the U.S. Supreme Court explained that a resisting

arrest conviction bars a section 1983 unreasonable seizure claim:

> An example of this latter category – a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful – would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata . . ., the § 1983 action will not lie. (Citations omitted.)

The section 1983 excessive force claims would necessarily imply that Ms. Fernandez and Mr. Rodriguez' section 148(a) convictions are wrongful. Pursuit of the excessive force claims entails and attempt to negate an element of the section 148(a) offenses. The convictions demonstrate, for purposes here, that Ms. Fernandez and Mr. Rodriguez' arrests, and the force to accomplish them, were lawful. If such arrests and use of force were unlawful, there would have been no section 148(a) convictions. Allowing the excessive force claims to proceed would involve an attempt to unwind the section 148(a) convictions, which *Heck* bars to warrant dismissal of the excessive force claims, particularly in the absence of the convictions' reversal, expungement or declaration of invalidity by a tribunal.

**Officer Souza**

Defendants contend that the FAC fails to allege a claim against Officer Souza given the FAC's limited allegation that "Officer Souza held a police dog next to [Ms. Fernandez'] head for no reason, causing [Ms. Fernandez] to suffer severe emotional distress." Defendants argue that holding a police dog next to Ms. Fernandez fails to constitute an actionable use of force.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

8

of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 813. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

The FAC is unclear as to how Officer Souza's use of the police dog constitutes excessive force. There are no allegations that Officer Souza or his police dog applied force to Ms. Fernandez. The FAC raises inferences that neither Officer Souza nor his police dog applied force to Ms. Fernandez. In the absence of a use of force, Ms. Fernandez lacks an excessive force claim against Officer Souza to further warrant dismissal of the (first) section 1983 excessive force claim.

### *Monell* Liability

The FAC's (third) *Monell* claim alleges:

1. The City "has a custom and common practice of failing to appropriately discipline its police officers for acts of misconduct, especially the use of excessive force against persons being arrested"; and

2. The City and Chief Wasden "had a legal duty to adequately discipline their officers in order to safeguard the public from police abuse" and "were deliberately indifferent to their duty to adequately and [sic] discipline their officers."

Defendants attack the FAC's lack of necessary facts and elements to support a *Monell* claim.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

9

Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

"In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). A local government entity may be liable under section 1983 "if its deliberate policy caused the constitutional violation alleged." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1995), *cert. denied*, 520 U.S. 1117, 117 S.Ct. 1249 (1997).

A municipal policy or custom is established by showing: (1)"a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

10

*Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-985 (9th Cir. 2002) (internal quotation marks and citations omitted).

Nonetheless, "a public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when . . . an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff." *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 1573 (1986).

Defendants initially attack the *Monell* claim in the absence of a viable section 1983 excessive force claim. Defendants are correct. With no cognizable constitutional injury, plaintiffs are unable to establish a policy, custom or practice of excessive force to impose *Monell* liability.

Turning to the merits of the *Monell* claim, defendants note that it alleges a violation of plaintiffs' Fourteenth Amendment rights.[4] Defendants argue that the FAC invokes nothing "outside the scope of the Fourth Amendment."

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims.'" *Albright*, 510 U.S. at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989)). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219 (1997).

In *Graham*, 490 U.S. at 395, 109 S.Ct. 1865, the U.S. Supreme Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's reasonableness standard:

> [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides

---

[4] The claim's title includes "Fourteenth Amendment – Municipal Custom of Tolerating Excessive Force."

an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Defendants are correct that the FAC alleges excessive force to invoke the Fourth Amendment, not the Fourteenth Amendment. The FAC lacks a viable Fourteenth Amendment claim to attempt to invoke *Monell* liability. Moreover, the complaint lacks facts to support a *Monell* claim and relies on conclusory allegations of failure to discipline. The FAC lacks facts to raise even inferences of a requisite policy or custom, final policy making authority, or delegation of authority or ratification of a subordinate's decision for a viable *Monell* claim. The (third) *Monell* claim is subject to dismissal.

## Lt. Cloward

The FAC's (fourth) failure to supervise claim alleges that Lt. Cloward "was the highest ranking officer on the scene," "personally directed and encouraged his subordinates in violating Plaintiff's Fourth Amendment rights," "was aware of the abusive behavior of the other defendant officers," and "had a legal duty to intervene and to exercise appropriate command functions to protect Plaintiffs."

Defendants challenge the FAC's failure to attribute Lt. Cloward's personal or direct wrongdoing given the FAC's limited above allegations.

### *Supervisory Liability*

Defendants fault the FAC's failure to link Lt. Cloward's supervisory conduct to a constitutional deprivation.

Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692, 98 S.Ct. at 2036. Generally, supervisory personnel are not liable under section 1983 for actions of their employees under a respondeat superior theory, and thus, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged and proved. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979).

To establish a prima facie case of supervisor liability, a plaintiff must allege facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional

rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045. A supervising official is liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).[5]

A fellow judge of this Court has explained that supervisory liability in an individual capacity requires: "(1) that defendant's 'own culpable action or inaction in the training, supervision, or control of his subordinates' caused the constitutional injury; (2) that the defendant 'acquiesce[d] in the constitutional deprivations of which [the] complaint is made;' or (3) that his conduct showed a 'reckless or callous indifference to the rights of others.'" *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1116 (E.D. Cal. 2005) (quoting *Larez*, 946 F.2d at 646)).

"The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991).

Defendants fault the FAC's mere "bald recitation of conclusory allegations" as to Lt. Cloward's supervisory liability.

Defendants are correct. The FAC offers mere generalities, not facts, that Lt. Cloward is subject to supervisory liability. There are no facts that Lt. Cloward personally participated in an alleged constitutional deprivation through his action or inaction, knew of the violations and failed to act to prevent them, or promulgated or implemented a constitutionally defective policy. Moreover, in the absence of an actionable section 1983 claim against the arresting officers, no factual basis exists to impose supervisory liability on Lt. Cloward to warrant dismissal of the (fourth) failure to supervise

---

[5] The Ninth Circuit offered alternative elements to impose section 1983 liability on a supervisor: "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers*, 267 F.3d at 915 (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).

claim. / / /

## State Law Claims

Defendants contend that plaintiffs' section 148(a) convictions bar their state law claims under public policy. Defendant point to *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1405-1406, 115 Cal.Rptr.2d 269 (2002), where the California Court of Appeal explained:

> It is established that a person convicted of resisting or obstructing a peace officer (Pen.Code, § 148, subd. (a)) may not maintain an action for the violation of federal civil rights (42 U.S.C. § 1983 (section 1983)) based on the officers' conduct during the arrest, unless the conviction has been set aside through appeal or other postconviction proceeding. We hold here that for public policy reasons, relief from a conviction under Penal Code section 148, subdivision (a) is also a prerequisite of state law battery and related claims arising from the alleged use of excessive force during the arrest.

Defendants further contend that plaintiffs' criminal convictions estop them "from relitigating facts necessarily established in the criminal proceeding." *Higginbotham v. King*, 54 Cal.App.4th 1040, 1044, 63 Cal.Rptr.2d 114 (1997); *see Compton v. Ide,* 732 F.2d 1429, 1434 (9th Cir. 1984) (action against officers for false arrest barred by plaintiff's criminal conviction). Defendants conclude that since the lawfulness of plaintiffs' arrests were established in their criminal action, plaintiffs are barred to relitigate facts "necessary to those convictions."

Defendants raise valid points. The state law claims arise out of their arrests leading to their convictions from which they have not obtained relief. The state law claims, like the section 1983 excessive force claims, pose a threat to unwind plaintiffs' valid section 148(a) convictions. Plaintiffs' criminal actions estop them to relitigate here the facts necessary to establish the state law claims. Public policy prevents such relitigation to bar the state law claims and to warrant their dismissal.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against defendants; and
2. DIRECTS the clerk to enter judgment against plaintiffs Miguel Rodriguez, Charisse Fernandez and Adrian Alizaga and in favor of defendants City of Modesto, Roy Wasden, Ron Cloward, John Buehler, Jeff Spruiell, James Murphy, Ronald Ziya, Mark Fontes and

/ / /

1 | Kalani Souza and to close this action.
2 | IT IS SO ORDERED.
3 | **Dated:**    **January 6, 2011**             **/s/ Lawrence J. O'Neill**
                                                               UNITED STATES DISTRICT JUDGE