# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RODRIGUEZ, et al., | CASE NO. CV F 10-1370 LJO MJS |
| Plaintiffs, | **ORDER ON PLAINTIFFS' F.R.Civ.P. 60(b) MOTION FOR RELIEF FROM JUDGMENT** |
| vs. | (Doc. 27.) |
| CITY OF MODESTO, et al., | |
| Defendants. / | |

## INTRODUCTION

After limited remand from the Ninth Circuit Court of Appeals, this Court considers plaintiffs'[1] F.R.Civ.P. 60(b)(1) motion for relief from dismissal of their 42 U.S.C. § 1983 ("section 1983") excessive force and common law battery and false arrest claims against defendant City of Modesto ("City") and several of its peace officers. This Court considered plaintiffs' F.R.Civ.P. 60(b)(1) motion on the record and without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES plaintiffs relief from dismissal of their claims.

## DISCUSSION

### Summary

Plaintiffs failed to respond to defendants' F.R.Civ.P. 12(b)(6) motion to dismiss plaintiffs' claims

---

[1] Plaintiffs are Miguel Rodriguez ("Mr. Rodriguez"), Charisse Fernandez ("Ms. Fernandez"), and Adrian Alizaga ("Mr. Alizaga") and will be referred to collectively as "plaintiffs."

1

raised in their First Amended Complaint for Damages for Violation of Civil Rights (42 U.S.C. Section 1983) and Related State Law Claims ("FAC").[2] This Court's January 6, 2011 order ("January 6 order") dismissed plaintiff's FAC claims, and judgment was entered for defendants against plaintiffs. Plaintiffs appealed the judgment and sought this Court's F.R.Civ.P. 60(b)(1) relief. With limited remand from the Ninth Circuit, this Court entertains plaintiffs' F.R.Civ.P. 60(b)(1) motion.

## **Summary Of FAC Allegations**

### *Mr. Alizaga's Arrest*

The FAC alleges that on February 8, 2009 at around 1 a.m., plaintiffs gathered at Mr. Alizaga's Modesto home to celebrate his birthday. A police officer knocked at the door, and Mr. Alizaga's dog ran out when he opened the door. As Mr. Alizaga tried to retrieve the dog, Officers Spruiell and Ziya grabbed Mr. Alizaga, threw him to the ground and handcuffed him "for no apparent reason." Officers Spruiell and Ziya struck Mr. Alizaga with their batons when Mr. Alizaga was on the ground. Mr. Alizaga was booked on charges of resisting arrest, a misdemeanor.

### *Mr. Rodriguez' Arrest*

Mr. Rodriguez came out of the house, observed Mr. Alizaga's arrest, and wanted to find out the reason. Mr. Rodriguez stood peaceably on the home's front lawn and attempted to learn from police why Mr. Alizaga had been arrested. Officers Ziya, Fontes and Murphy arrested Mr. Rodriguez without having observed him commit a criminal offense. During the arrest, Officer Fontes shot Mr. Rodriguez with his Taser several times, and Officer Ziya struck Mr. Rodriguez' arm with his baton. Officer Murphy gave the "bite command" to his K-9 which bit Mr. Rodriguez, who never struck or attempted to strike the officers.

When Mr. Rodriguez was handcuffed and walked to a patrol car, unidentified officer Doe Defendant No. 1 put a shotgun to Mr. Rodriguez' back and banged his head against the roof of the patrol car. Doe Defendant No. 1 attempted to break Mr. Rodriguez' bad leg after Mr. Rodriguez had alerted

---

[2] In addition to the City, the FAC names as defendants City Police Chief Roy Wasden ("Chief Wasden") and City police officers Lieutenant Ron Cloward ("Lt. Cloward"), Sergeant John Buehler ("Sgt. Buehler"), and officers Jeff Spruiell ("Officer Spruiell"), James Murphy ("Officer Murphy"), Ronald Ziya ("Officer Ziya"), Mark Fontes ("Officer Fontes") and Kalani Souza ("Officer Souza"). The City and the eight defendant City peace officers will be referred to collectively as "defendants."

2

the officer of a prior injury to the leg. Mr. Rodriguez screamed: "What are you doing to me? I have a daughter!" Doe Defendant No. 1 responded: "Fuck your daughter, you piece of shit!"

The police threw Mr. Rodriguez in the back of a patrol car to injure his bad leg. The police took Mr. Rodriguez to a hospital for medical clearance and then to jail. Mr. Rodriguez was released the following morning at about 1 a.m. with a citation for resisting arrest, a misdemeanor.

### *Ms. Fernandez' Arrest*

When the police arrested Mr. Alizaga and Mr. Rodriguez, Ms. Fernandez came outside and observed Mr. Alizaga and Mr. Rodriguez being beaten. As Ms. Fernandez stood on the home's porch and watched, Sgt. Buehler grabbed Ms. Fernandez, threw her to the ground, and handcuffed her for "no apparent reason." Unidentified officer Doe Defendant No. 2 struck Ms. Fernandez several times with his club when Ms. Fernandez lay face-down on the front lawn, handcuffed and screaming for help. Officer Souza held a police dog next to Ms. Fernandez' head for no reason. Police placed Ms. Fernandez in a patrol car's back seat and ignored her repeated requests for an explanation. The police transported Ms. Fernandez to an airport parking lot where no female officer was present. Ms. Fernandez feared "the police would sexually assault her." Ms. Fernandez was transported to a hospital for medical clearance, was taken to jail, was charged with resisting arrest, and released with a citation for resisting arrest, a misdemeanor.

Lt. Cloward was the "ranking officer" on the scene and did nothing to restrain the unlawful behavior of officers under his command.

### **Plaintiffs' Nolo Contendere Pleas**

On February 10, 2009, a misdemeanor criminal complaint was filed in Stanislaus County Superior Court to charge each plaintiff with a count of violation of California Penal Code section 148(a) (restricting, delaying or obstructing peace officer) ("section 148(a)"). The criminal complaint accused:

1. Mr. Alizaga of wilfully and unlawfully resisting, obstructing and delaying Officer Spruiell;
2. Ms. Fernandez of wilfully and unlawfully resisting, obstructing and delaying Sgt. Buehler and Officer Fontes; and
3. Mr. Rodriguez of wilfully and unlawfully resisting, obstructing and delaying Officer

3

Murphy.

Plaintiffs entered nolo contendere pleas to charges against them and were convicted subject to their pleas.

### The FAC's Claims

The FAC alleges:

1. A (first) section 1983 claim that Sgt. Buehler, Officer Souza and Doe Defendant No. 1 "used unreasonable force when arresting" Ms. Fernandez to violate the Fourth Amendment;

2. A (second) section 1983 claim that Officers Murphy, Fontes and Ziya "used unreasonable force when arresting" Mr. Rodriguez to violate the Fourth Amendment;

3. A (third) *Monell* claim that:
    a. The City "has a custom and common practice of failing to appropriately discipline its police officers for acts of misconduct, especially the use of excessive force against persons being arrested"; and
    b. The City and Chief Wasden "had a legal duty to adequately discipline their officers in order to safeguard the public from police abuse" and "were deliberately indifferent to their duty to adequately and [sic] discipline their officers";

4. A (fourth) failure to supervise claim that Lt. Cloward "was the highest ranking officer on the scene," "personally directed and encouraged his subordinates in violating Plaintiff's Fourth Amendment rights," "was aware of the abusive behavior of the other defendant officers," and "had a legal duty to intervene and to exercise appropriate command functions to protect Plaintiffs";

5. A (fifth) battery and sixth (false arrest) claims that:
    a. Sgt. Buehler, Officer Souza and Doe Defendant No. 1 committed battery against and falsely arrested Ms. Fernandez;
    b. Officers Spruiell and Ziya committed battery against and falsely arrested Mr. Alizaga; and

|   |   |   |
|---|---|---|
| 1 | c. | Officers Murphy, Fontes, Ziya and Doe Defendant No. 2 committed battery |
| 2 |   | against and falsely arrested Mr. Rodriguez; and |
| 3 | 6. | A (seventh) California Civil Code sections 51.7 and 52.1 claim that: |
| 4 | a. | Sgt. Buehler, Officer Souza and Doe Defendant No. 1 violated Ms. Fernandez' |
| 5 |   | civil rights by threats, force and intimidation; |
| 6 | b. | Officers Spruiell and Ziya violated Mr. Alizaga's civil rights by threats, force |
| 7 |   | and intimidation; and |
| 8 | c. | Officers Murphy, Fontes, Ziya and Doe Defendant No. 2 violated Mr. Rodriguez' |
| 9 |   | civil rights by threats, force and intimidation. |

The FAC seeks recovery for plaintiffs' multiple contusions and abrasions and emotional distress and for Ms. Fernandez' cervical strain.

**Dismissal Of Plaintiffs' Claims**

After plaintiffs failed to oppose defendants' F.R.Civ.P. 12(b)(6) motion, this Court's January 6 order dismissed with prejudice all FAC claims, and judgment effective January 6, 2011 was entered for defendants against plaintiffs. Plaintiffs filed a February 4, 2011 notice of appeal of dismissal of their claims.

On April 8, 2011, plaintiffs filed in this Court their F.R.Civ.P. 60(b)(1) motion for relief from the judgment to claim that the January 6 order erroneously dismissed their claims for Fourth Amendment violations, battery and false arrest. This Court's April 11, 2011 order denied without prejudice plaintiffs' F.R.Civ.P. 60(b)(1) motion in that their appeal divested this Court's jurisdiction to prevent it to address the motion. The Ninth Circuit's May 16, 2011 order remanded the matter to this Court for the limited purpose to consider plaintiffs' F.R.Civ.P. 60(b)(1) motion. As such, this Court considers plaintiffs' F.R.Civ.P. 60(b)(1) motion.

**DISCUSSION**

**F.R.Civ.P. 60(b) Motion For Relief Of Judgment Standards**

F.R.Civ.P. 60(b)(1) permits relief from final judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." F.R.Civ.P. 60(b) relief is not a matter of right and rests in the trial court's sound discretion. *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997); *de la*

1  *Torre v. Continental Ins. Co.*, 15 F.3d 12, 14 (1st Cir. 1994); *see Carter v. United States*, 973 F.2d 1479, 1489 (9th Cir. 1992). F.R.Civ.P. 60(b) relief may be granted "only upon an adequate showing of exceptional circumstances." *Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997); *Massengall v. Oklahoma Bd. of Examiners in Optometry*, 30 F.3d 1325, 1330 (10th Cir. 1994); *United States v. Bank of New York*, 14 F.3d 756, 757 (2nd Cir. 1994).

A motion for F.R.Civ.P. 60(b)(1) relief "must be made within a reasonable time . . . no more than a year after entry of the judgment or order." F.R.Civ.P. 60(c)(1).

Plaintiffs appear to pursue the "excusable neglect" avenue for their requested relief. Excusable neglect "covers negligence on the part of counsel." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000). "[D]etermination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223-1224 (9th Cir. 2000) (citing *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489 (1993) (excusable neglect "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission")). Although not an "explicit" factor, prejudice to the movant should be considered when appropriate. *Lemoge v. U.S.*, 587 F.3d 1188, 1195 (9th Cir. 2009).

F.R.Civ.P. 60(b)(1) "requires the moving party to justify its actions . . . or to show that its mistake was unexpected and unavoidable rather than careless." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir. 1987) (citations omitted). "As a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). "[W]e have held in both criminal and civil cases that mistake of counsel does not constitute excusable neglect." *U.S. v. Prairie Pharmacy, Inc.*, 921 F.2d 211, 213 (9th Cir. 1990).

Plaintiffs offer next to nothing to support excusable neglect. They merely offer the declaration of their counsel Steven R. Yourke ("Mr. Yourke") that: "I did not file an Opposition Brief on behalf of Plaintiffs in response to Defendants' Motion to Dismiss the First Amended Complaint because I neglected to file it on my calendar." Plaintiffs fail to address potential prejudice to defendants or

whether they proceed in good faith. As to delay, plaintiffs confused matters in that they appealed the January 6 order yet three months after its entry, pursue this F.R.Civ.P. 60(b)(1) motion. The record lacks meaningful support that Mr. Yourke's neglect was excusable.

**Disguised Reconsideration Of Dismissed Claims**

Plaintiffs appear to claim that they are entitled to F.R.Civ.P. 60(b)(1) relief because this Court erred to dismiss their excessive force, battery and false arrest claims. Plaintiffs' vague papers appear not to challenge dismissal of the FAC's *Monell*, failure to supervise and California Civil Code section 51.7 and 52.1 claims and raise no grounds to support them. At bottom, the effect of plaintiffs' F.R.Civ.P. 60(b)(1) motion is to seek reconsideration of dismissal of the excessive force, battery and false arrest claims.

A basic principle of federal practice is that courts generally refuse to reopen decided matters. *Magnesystems, Inc. v. Nikken*, 933 F.Supp. 944, 948 (C.D. Cal. 1996). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). A reconsideration motion "should not be granted absent highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972 (1989). A reconsideration motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2nd Cir. 1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (internal citations omitted). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Westlands Water*, 134 F.Supp.2d at 1131.

Reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence; (2) has committed clear error or the initial decision was manifestly unjust; or (3) is presented with an intervening change in controlling law. *School District 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742 (1994). There may be

7

other highly unusual circumstances warranting reconsideration. *School District 1J*, 5 F.3d at 1263. Denial of reconsideration is reviewed for abuse of discretion. *School District 1J*, 5 F.3d at 1262.

A motion for reconsideration is restricted and serves "a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publisher's Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665-666 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) (italics in original)); *see Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1142, n. 6 (9th Cir. 1999), *cert. denied*, 529 U.S. 1129, 120 S.Ct. 2005 (2000). Reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration should not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *See Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D. Del. 1990). Under this Court's Local Rule 230(j), a party seeking reconsideration must demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion."

With these standards in mind, this Court turns to plaintiffs' challenges to dismissal of their excessive force, battery and false arrest claims.

**Excessive Force**

As a reminder, the FAC's first and second claims allege that Sgt. Buehler, Officer Souza and Doe Defendant No. 1 used excessive force to arrest Ms. Fernandez and that Officers Murphy, Fontes and Ziya used excessive force to arrest Mr. Rodriguez.

To support dismissal, defendants argued that Ms. Fernandez and Mr. Rodriguez' nolo contendere pleas and resulting convictions bar their excessive force claims.

In *Heck v. Humphrey*, 512 U.S. 477, 487-488, 114 S.Ct. 2364 (1994), the U.S. Supreme Court explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

"*Heck* says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938 (2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)). *Heck* objectives include "preserving consistency and finality, and preventing 'a collateral attack on [a] conviction through the vehicle of a civil suit.'" *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (quoting *Heck*, 512 U.S. at 484-485, 114 S.Ct. 2364). "[F]or purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty." *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D. Cal. 1999).

To warrant dismissal of the excessive force claims, the January 6 order explained:

> The section 1983 excessive force claims would necessarily imply that Ms. Fernandez and Mr. Rodriguez' section 148(a) convictions are wrongful. Pursuit of the excessive force claims entails an attempt to negate an element of the section 148(a) offenses. The convictions demonstrate, for purposes here, that Ms. Fernandez and Mr. Rodriguez' arrests, and the force to accomplish them, were lawful. If such arrests and use of force were unlawful, there would have been no section 148(a) convictions. Allowing the excessive force claims to proceed would involve an attempt to unwind the section 148(a) convictions, which *Heck* bars to warrant dismissal of the excessive force claims, particularly in the absence of the convictions' reversal, expungement or declaration of invalidity by a tribunal.

Plaintiffs argue that *Heck* bars "claims challenging the lawfulness of their arrests" but not Ms. Fernandez and Mr. Rodriguez' excessive force claims. Plaintiffs argue that their nolo contendere claims do not "establish that the police used only such force as was reasonable under the circumstances." Plaintiffs rely on *Smith*, 394 F.3d at 693, where the Ninth Circuit held that an arrestee's "§ 1983 action is not barred by *Heck* because the excessive force may have been employed against him subsequent to

9

the time he engaged in the conduct that constituted the basis of his [section 148(a)(1)] conviction. In such circumstance, [the arresstee's] § 1983 action neither demonstrates nor necessarily implies the invalidity of his conviction."

Plaintiffs argue that their conduct subjecting them to section 148(a) charges "may have occurred before they were arrested and before the police used force against them." Plaintiffs continue that the "record in this case does not provide us with any indication at all about the alleged facts that led to the arrests."

Defendants respond that the FAC alleges in effect that plaintiffs engaged in no activity to resist, obstruct or delay a peace officer, in other words, that plaintiffs conducted themselves peacefully at all times. Defendants point to *Yount v. City of Sacramento*, 43 Cal.4th 885, 898, 76 Cal.Rptr.3d 787 (2008), *cert. denied*, 129 U.S. 905 (2009), where the California Supreme Court explained:

> . . .our task is to analyze the relationship between Yount's [plaintiff's] resistance, as evidenced by his criminal conviction, and Officer Shrum's alleged misconduct, as set forth in the first amended complaint. . . . Hence, to the extent that Yount's section 1983 claim alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ any force against him at the time he was shot, the **claim is inconsistent with his conviction** for resisting the officers and is barred under *Heck*. (*Thore v. Howe* (1st Cir.2006) 466 F.3d 173, 180 [claim that the plaintiff had not committed an assault, and thus that the officer's use of force in response was excessive, was barred by plaintiff's assault conviction] . . . (Bold added.)

In *Hooper v. County of San Diego*, 629 F.3d 1127, 1132 (9th Cir. 2011), the Ninth Circuit Court of Appeals analyzed *Yount*:

> The Court's decision in *Yount* does not mean that our holding in *Smith* was wrong. But it does mean that our understanding of § 148(a)(1) was wrong. Section 148(a)(1) does not require that an officer's lawful and unlawful behavior be divisible into two discrete "phases," or time periods, as we believed when we decided *Smith*. It is sufficient for a valid conviction under § 148(a)(1) that at some time during a "continuous transaction" an individual resisted, delayed, or obstructed an officer when the officer was acting lawfully. It does not matter that the officer might also, at some other time during that same "continuous transaction," have acted unlawfully.
>
> We are, of course, bound by the California Supreme Court's interpretation of California law. *Chalk v. T–Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir.2009). We therefore apply *Heck* to § 148(a)(1) as the California Supreme Court interpreted it in *Yount*.

The FAC makes no concession that plaintiffs resisted, delayed or obstructed the defendant officers. In fact, as defendants note, the FAC reflects that plaintiffs "were peacefully gathered," "stood

peaceably," and were subject to the defendant officers' physical contact and arrest "for no apparent reason" and without committing a criminal offense. Defendants contend that in the absence of FAC facts to concede resistance, delay or obstruction, the FAC seeks to invalidate plaintiffs section 148(a) convictions which *Yount* bars. Defendants conclude that the FAC alleges facts "which the California Supreme Court has expressly held bar the prosecution of a section 1983 excessive force claim" and that "the instant excessive force claims are barred by the *Heck* decision."

Defendants raise valid points at to interpretation of *Yount* and *Hooper*. The FAC's alleged facts and the inferences from them reflect that plaintiffs engaged in no wrongdoing during the events surrounding their arrests. This Court "must, of course, take as true the material facts" alleged in the FAC. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, __ U.S. __ (1976). As such, based on plaintiffs' alleged absence of wrongdoing, pursuit of their excessive force claims would serve to invalidate their section 148(a) convictions. Plaintiffs' points as to their conduct prior to their arrests are unavailing as this Court must accept the FAC's facts that plaintiffs acted peacefully and were subjected to excessive force "for no apparent reason."

Moreover, a question arises whether plaintiffs should be allowed to raise at this late point arguments which should have been brought months ago to oppose defendants' F.R.Civ.P. 12(b)(6) motion. As a reminder, reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises*, 229 F.3d at 890. Reconsideration should not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *See Brambles USA*, 735 F.Supp. at 1240. Plaintiffs fail to clear the initial hurdle of permitting them to present points which they could have easily done months ago. Plaintiffs merely rely on a thin excuse that Mr. Yourke failed to calendar an opposition deadline. Plaintiffs offer almost nothing to substantiate the extraordinary remedy of reconsideration, especially given that the FAC's absence of facts of plaintiffs' resistance, delay or obstruction supports a *Heck* bar.

**Battery And False Arrest**

Plaintiffs also challenge dismissal of the battery and false arrest claims and rely on California Penal Code section 1016 ("section 1016"), which requires court approval of nolo contendere pleas and

11

provides in part:

> The court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. . . . In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.

Plaintiffs argue that section 1016 enables "criminal defendants facing misdemeanor charges to plead 'no contest' without that plea being used against them in a civil action arising from facts underlying the criminal case." Plaintiffs continue that no court has held that "*Heck* overrides or invalidates the express provisions" of section 1016. As such, plaintiff conclude that *Heck* does not preclude plaintiffs to pursue battery and false arrest claims.

Defendants point to *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1405-1406, 115 Cal.Rptr.2d 269 (2002), where the California Court of Appeal explained:

> It is established that a person convicted of resisting or obstructing a peace officer (Pen.Code, § 148, subd. (a)) may not maintain an action for the violation of federal civil rights (42 U.S.C. § 1983 (section 1983)) based on the officers' conduct during the arrest, unless the conviction has been set aside through appeal or other postconviction proceeding. We hold here that for public policy reasons, relief from a conviction under Penal Code section 148, subdivision (a) is also a prerequisite of state law battery and related claims arising from the alleged use of excessive force during the arrest.

Plaintiffs offer no meaningful support for their battery and false arrest claims. Plaintiffs fail to substantiate section 1016's application to the issues at hand and to a federal civil action. Plaintiffs' understanding and the voluntariness of their nolo contendere pleas are not at issue.

Moreover, plaintiffs acknowledge that *Heck* bars a section 1983 false arrest claim. The logic which they acknowledge to bar a section 1983 false arrest claim applies equally to their state tort claims. "[W]e cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct . . . Section 1983 creates a species of tort liability and has been described as the federal counterpart of state battery or wrongful death actions." *Yount,* 43 Cal.4th at 902, 76 Cal.Rptr.3d 787 (2008) (internal quotations and citations omitted). A plaintiff's "common law battery cause of action, like his section 1983 claim, requires proof that [the defendant officer] used unreasonable force." *Yount,* 43 Cal.4th at 902, 76 Cal.Rptr.3d 787 (2008). Similar to their excessive force claims,

plaintiffs' battery and false arrest claims are barred for public policy reasons.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES plaintiffs reconsideration and relief from judgment.

IT IS SO ORDERED.

Dated:     June 6, 2011                             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE