**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL RODRIGUEZ and CHARISSE FERNANDEZ, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MODESTO, *et al.*, <br><br> Defendants. | CASE NO.  1:10-CV-01370-LJO-MJS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. 42)** |

## I. <u>INTRODUCTION</u>

This civil rights action arises from the arrests of Plaintiffs Miguel Rodriguez and Charisse Fernandez on February 8, 2009 in Modesto, California by Modesto Police Department officers. Plaintiffs allege they were subjected to unreasonable force in violation of their Fourth Amendment rights and 42 U.S.C. § 1983, as well as in violation of their civil rights under California Civil Code sections 51.7 and 52.1. They also assert claims for assault, battery, and negligence.

Defendants move to dismiss the first, second, third, fourth, fifth, sixth, ninth, and tenth causes of action in the currently operative Second Amended Complaint ("SAC"). Doc. 42. Plaintiffs oppose dismissal. Doc. 43. Defendants replied. Doc. 42. The hearing on the motion, originally set for November 13, 2013, was vacated and the matter was submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 45.

## II. <u>BACKGROUND</u>[1]

**A.      <u>Factual Background.</u>**

On February 8, 2009, at approximately 1:00 a.m., Plaintiffs were among a large group of people gathered at the home of Adrian Alizaga, in Modesto, California, for Mr. Alizaga's birthday party. SAC ¶ 14. Music was played at the party and Police were called to investigate a noise complaint by a neighbor.

---

[1] These background facts are drawn exclusively from the FAC, the truth of which must be assumed for purposes of a Rule 12(b)(6) motion to dismiss.

*Id*. When the police arrived, the music had already been turned off. *Id*. When an officer knocked at the front door, Mr. Alizaga opened the door and stepped outside. When Mr. Alizaga did not return, several of his guests stepped outside, where they observed a number of police officers and saw Alizaga lying on the ground in handcuffs. *Id*.

Plaintiff Rodriguez stood on the front lawn and attempted to speak to the police to find out why Alizaga had been arrested. SAC ¶ 15. Plaintiff Fernandez stood on the front porch. *Id*. The police ordered the crowd of people who had come outside to move back or go inside the house. *Id*. Rodriguez remained on the front lawn and did not move back. *Id*. Suddenly, and without any warning, a police officer approached Rodriguez and grabbed him from behind in an apparent effort to place him under arrest. *Id*. Rodriguez was surprised at being grabbed by a police officer but he did not offer any physical resistance. *Id*. However, within moments, another officer, Defendant Fontes, approached Rodriguez and tasered him several times; a second officer, Defendant Murphy, Deployed his canine against Rodriguez; and a third officer, Defendant Ziya, struck Rodriguez with his baton. Rodriguez claims to have been "clearly unarmed" and that he "did not offer any physical resistance to the police at all, even after they used force against him." *Id*.

Rodriguez was arrested for "delaying, obstructing or resisting" the police, a misdemeanor under California Penal Code section 148(a). SAC ¶ 16. Police handcuffed him and escorted him to a nearby patrol car. *Id*. An officer whose true identity is unknown to Plaintiffs and who is sued herein as John Doe No. 2 put a shotgun to Rodriguez's back and banged Rodriguez's head against the roof of the patrol car. Rodriguez told Doe No. 2 that he had an injured leg and asked him to be careful with it. *Id*. Doe No. 2 then deliberately attempted to injure Rodriguez by bending his bad leg backward. *Id*. This caused Rodriguez pain. *Id*. Rodriguez was terrified and pleaded for mercy. *Id*. He screamed: "What are you doing to me? I have a daughter!" *Id*. Doe No. 2 responded by yelling, "Fuck your daughter, you piece of shit!" *Id*. The officer then threw Rodriguez in the back of a patrol car, injuring his bad leg in the process and causing him to cry out in pain. *Id*. Rodriguez feared for his life. *Id*. The police then took Rodriguez to the local hospital for medical clearance and from there to the jail. *Id*. He was released the following morning at around 1:00 a.m. with a

citation. *Id*.

Fernandez came outside along with Rodriguez and the other houseguests to see what had happened to her boyfriend, Alizaga. SAC ¶ 17. She observed Alizaga lying on the ground in handcuffs and she observed the police using force against Rodriguez as described above. *Id*. She was standing on the front porch of the house when she was suddenly grabbed without warning by Defendant Officer Buehler who threw her roughly to the ground on the front lawn and handcuffed her, face down, on the grass. *Id*. Defendant Officer Souza then held a police dog close to her head. *Id*. The dog was straining at the leash and lunging and barking aggressively at Fernandez, causing her to scream loudly in terror for her life. *Id*. While she was screaming and lying face-down on the lawn in handcuffs, another officer whose true identity is presently unknown to Plaintiffs and is therefore sued herein under the fictitious name of Officer John Doe No. 1, approached her from behind and struck her about the legs several times with his club. *Id*. Eventually, the police placed Fernandez in the back of a patrol car and transported her to a local hospital for medical clearance where her injuries were noted. *Id*. She was then taken to the jail where she was booked on misdemeanor charges of violating Penal Code section 148(a). *Id*.

Defendant Lieutenant Cloward was the ranking officer on the scene. SAC ¶ 18. He observed the police conduct described above and complained and did nothing to prevent it, stop it, or protect the Plaintiffs. *Id*.

On February 10, 2009, a misdemeanor criminal complaint was filed against Rodriguez and Fernandez in the Superior Court of Stanislaus County, in which each was charged with one misdemeanor count of violating California Penal Code § 148(a). Doc. 42, Ex. A.[2] Rodriguez and Fernandez each entered pleas of nolo contendere. Doc. 42, Exs. B & C.

**B.   Procedural History.**

The original complaint in this case was filed on July 29, 2010, followed by a First Amended Complaint ("FAC") on December 8, 2010. Docs. 1 & 16. A January 6, 2011 Order dismissed the FAC

---

[2] The Court may take judicial notice of the misdemeanor complaint and the minute orders reflecting Plaintiffs' pleas of nolo contendere, Doc. 42, Exs. A-C, as they are readily attainable court records. Fed. R. Evid. 201; *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004)

with prejudice, finding, among other things, that the federal claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. 19. The Ninth Circuit reversed, remanding for further proceedings. *Rodriguez v. City of Modesto*, 2013 WL 3958459, --- Fed. Appx. --- (9th Cir. Aug. 2, 2013)

### III. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*,

4

556 U.S. at 681. In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>DISCUSSION</u>

**A.   <u>First Cause of Action Against Defendants Souza and Doe 1.</u>**

The First Cause of Action alleges that Officers Buehler, Souza, and John Doe No. 1 violated Plaintiff Fernandez's Fourth Amendment right to be free from unreasonable force. Defendants move to dismiss the First Cause of Action against Defendants Souza and Doe No. 1, pointing out, correctly, that the First Cause of Action does not contain any factual allegations as to either Defendant Souza's or Defendant Doe No. 1's conduct. Doc. 42 at 6. Plaintiffs do not address this argument in their opposition. Accordingly, Defendants' motion to dismiss the First Cause of Action as to Defendants Souza and Doe No. 1 is GRANTED.

**B.   <u>First Cause of Action Against Defendant Buehler.</u>**

Defendants next move to dismiss the First Cause of Action against Defendant Buehler on the ground that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1944), because of Plaintiff Fernandez's plea of nolo contendere to the misdemeanor charge of violating California Penal Code § 148(a)(1). The starting point for analysis of this argument is Ninth Circuit's ruling on this issue in its recent decision in this case:

> Under the Supreme Court's decision in *Heck*, a plaintiff cannot maintain a § 1983 suit for damages if success on the § 1983 claim would "necessarily imply" the invalidity of a related prior criminal conviction, such as by negating an element of the convicted offense. 512 U.S. at 486–87 & n. 6. California recognizes a similar doctrine, and the "California Supreme Court has not distinguished between the application of Heck to § 1983 [excessive force] claims and the application of analogous California law to state-law claims." *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885, 76 Cal. Rptr. 3d 787, 183 P.3d 471, 484 (Cal. 2008)).

1

2

3

4

5

6

Under California law, an essential element of a valid § 148(a)(1) conviction is that the police officer was acting lawfully in the discharge or attempted discharge of her duties at the time the defendant resisted, delayed, or obstructed the officer. *See Garcia v. Superior Court*, 177 Cal. App. 4th 803, 99 Cal. Rptr. 3d 488, 500 (Ct. App. 2009). A police officer is not lawfully performing her duties if she arrests an individual without probable cause, *see id.*, or uses unreasonable or excessive force on the individual at the time the defendant's unlawful resistance, delay or obstruction is occurring, *see People v. Olguin*, 119 Cal. App. 3d 39, 173 Cal. Rptr. 663, 667 (Ct. App. 1981).

7

8

9

10

11

Plaintiffs' convictions establish for purposes of *Heck* that at some point during the February 8 incident, Plaintiffs resisted, delayed, or obstructed the arresting officers at a time when the officers were acting lawfully, and thus using reasonable force, in violation of § 148(a)(1). Therefore, to the extent Plaintiffs maintain they did nothing wrong and were arrested without reason, the district court correctly dismissed their § 1983 and state law claims in light of *Heck* and its California analogue, because success on such claims would necessarily imply Plaintiffs did not violate § 148(a)(1).

12

13

14

15

16

*Heck* is not the death knell of Plaintiffs' § 1983 excessive force claims, however. Plaintiffs may, consistent with *Heck*, pursue claims that the arresting officers used excessive force subsequent to Plaintiffs' unlawful resistance, delay, or obstruction, such as a claim of post-arrest excessive force, *see Sanford v. Motts*, 258 F.3d 1117, 1119–20 (9th Cir. 2001), or a claim that, though having a right to use reasonable force based on Plaintiffs' § 148(a)(1) violations, the arresting officers responded with excessive force, *see Hooper*, 629 F.3d at 1133; *Yount*, 76 Cal. Rptr. 3d 787, 183 P.3d at 481–82.

17  *Rodriguez*, 2013 WL 3958459, *1 (emphasis added). Pursuant to this framework, Plaintiffs' excessive

18  force claim may survive if they allege (1) post-arrest excessive force; or (2) that, even though officers

19  may resort to reasonable force to quell a § 148(a)(1) violation, the force used was excessive.

20          The First Cause of Action alleges in its entirety:

21

22

23

24

25

26

21. Defendant Officer BUEHLER grabbed plaintiff FERNANDEZ from off the porch and threw her roughly to the ground on the front lawn. Such use of force was objectively unreasonable under the circumstances because FERNANDEZ did not physically resist the police at all, did not pose any threat to them at all, did not attempt to flee and had not committed any violent crime. If BEUHLER wanted to arrest FERNANDEZ, he should have simply informed her she was arrest and then ordered her to place her hands behind her back so she could be handcuffed. There was no reason at all for BUEHLER to grab her and throw her to the ground.

6

22. BUEHLER thus violated FERNANDEZ' right not to be subjected to unreasonable force as protected under the Fourth Amendment to the United States Constitution. FERNANDEZ sues BUEHLER for damages for violation of civil rights pursuant to 42 U.S.C. Section 1983.

SAC ¶¶ 21-22. Fernandez does not allege use of excessive force <u>subsequent</u> to arrest. Rather, Fernandez appears to be attempting to invoke the second option by alleging that the force used was excessive to that reasonably necessary. Plaintiffs point out, correctly, that California Penal Code § 148(a)(1), the offense to which Fernandez pled guilty, makes it unlawful for a person to "willfully resist[], delay[], or obstruct[] any ... peace officer...." According to Plaintiffs' theory of the case, Fernandez was arrested because she stood on the porch and therefore failed to comply with the order to "move back." Doc. 43 at 10. Fernandez alleges that she offered no resistance and that officer Buehler should have informed her she was under arrest and permitted her to place her hands behind her back before handcuffing her. This implies that Buehler was not justified in employing <u>any</u> force against her. The key question is: Does this allegation necessarily imply the invalidity of her conviction?

In suggesting that it does, Defendant correctly points out that an officer has the right to respond to an individual who is violating California Penal Code § 148 with "reasonable force." Doc. 42 at 8 (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008)). Likewise, it is well established that for a conviction under § 148(a)(1) to be valid, the defendant must have "resist[ed], delay[ed], or obstruct[ed]" a police officer in the <u>lawful</u> exercise of his or her duties. *See Yount*, 43 Cal. 4th at 894. "The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)." *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011). This element has led to a confusing line of cases applying *Heck* to individuals convicted under § 148.

In *Smith v. City of Hemet*, 394 F.3d 689, 693-94 (9th Cir. 2005) (en banc), police officers responded to a domestic violence call from within Smith's residence. When police arrived, Smith was standing on his front porch. *Id.* at 693. Smith twice refused to comply with the officers' lawful orders to take his hands out of his pockets. He eventually took his hands out of his pockets, but then refused a

lawful order to put his hands on his head and walk off the porch toward the officers, and failed to comply with a second lawful order to put his hands on his head and turn around. *Id*. at 693-94. The officers then came onto the porch, sprayed Smith in the face with pepper spray, slammed him against his front door, threw him down on the porch, and ordered a dog to bite him several times. *Id*. at 694. The officers then dragged Smith off the porch and ordered the dog to bite Smith again. *Id*.

Smith pled guilty to a violation of § 148(a)(1). *Id*. Subsequently, Smith filed a § 1983 excessive force claim against the officers. *Id*. The Ninth Circuit held that Smith's excessive force claim was not barred by *Heck*, dividing Smith's conduct into different "phases." *Id*. at 698. First, Smith resisted, delayed, or obstructed the officers before they came on the porch, in the "investigative phase." *Id*. During this phase, they "issued only verbal commands, all of which were concededly well within the bounds of their general police powers." *Id*. "Smith's obstruction of that investigation came to an end when the officers decided to arrest him. Thereafter, in the course of the arrest, they allegedly engaged in the use of excessive force that rendered the arrest unlawful." *Id*. Because Smith's guilty plea could properly have been based on his behavior during the first phase, "a judgment in Smith's favor would not necessarily conflict with his conviction because his acts of resistance ... would have occurred while the officers were engaged in the lawful performance of their investigative duties, not while they were engaged in effecting an arrest by the use of excessive force." *Id*. Put another way, because there was a factual basis for Smith's § 148(a)(1) guilty plea that involved only lawful behavior by the police, success in Smith's § 1983 suit would "not necessarily imply the invalidity of his conviction and is therefore not barred by *Heck*." *Id*. at 699 (emphasis in original).

Four years after *Smith*, the California Supreme Court held that a conviction under § 148(a)(1) can be valid even if the events could not be separated into distinct phases; rather, an excessive force claim could proceed if, during a single continuous chain of events, some of the officer's conduct was unlawful. *Yount*, 43 Cal. 4th 885. Yount was observed in the parking lot of a convenience store visibly drunk and heading toward his car. *Id*. at 889. The responding officer placed Yount into the back of his

8

patrol car. *Id*. Yount proceeded shout obscenities and racial slurs, and began to bang his head against the side and window of the patrol vehicle. *Id*. Concerned that Yount would injure himself, the responding officer and two private security guards removed Yount from the vehicle, handcuffed him, and placed him back into the patrol unit. *Id*. at 890. After Yount kicked out the side window of the patrol car, officers tried to place him in leg restraints, but he continued to act uncooperatively, even after his ankles were secured together. *Id*. Yount tried to bite and spit at the officers and continued to kick. *Id*. at 891. One officer decided to use his Taser on Yount, but mistakenly drew his gun rather than his Taser. *Id*. The officer shot Yount in his upper thigh. *Id*. Yount pleaded no contest to a violation of § 148(a)(1). *Id*. He then filed a § 1983 excessive force claim in state court. *Id*.

The California Supreme Court distinguished the facts in *Smith* from those in *Yount*, finding that "unlike in Smith, Yount's acts of resistance were part of one continuous transaction involving the officers' efforts to effect his arrest and cannot be segregated into an investigative phase and an independent arrest phase." 43 Cal. 4th at 901 (emphasis added). *Heck* barred Yount's § 1983 claim to "the extent that [it] alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ any force against him at the time he was shot[.]" *Id*. at 898 . However, Yount's § 1983 claims were not entirely barred by *Heck*, even though the allegedly excessive force was used during "one continuous transaction." *Id*. at 901. Rather, even if events transpired in a "continuous chain of events," multiple "factual contexts" could exist. *Id*. at 899. One might "giv[e] rise to criminal liability on the part of the criminal defendant, and the second [might] giv[e] rise to civil liability on the part of the arresting officer." *Id*. In explaining its reasoning, *Yount* quoted *Jones v. Marcum*, 197 F .Supp. 2d 991, 1005 n. 9 (S.D. Ohio 2002):

> [A] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer."

9

*Id*. at 899.

The Ninth Circuit applied the lessons of *Yount* in *Hooper*, 629 F.3d 1127. In that case, viewing the evidence in a light most favorable to plaintiff on a motion to dismiss, plaintiff struggled briefly with an arresting K9 officer, but stopped resisting after the officer secured her hands behind her back. *Id*. at 1129. Shortly thereafter, concerned because spectators had gathered near his patrol vehicle, the K9 officer called his dog to "come here." *Id*. The dog then ran toward plaintiff and bit her several times. *Id*. Hooper alleged that the dog bites constituted excessive force. *See id*. Because the conviction and the § 1983 claim were "based on different actions during 'one continuous transaction' " the Ninth Circuit permitted the excessive force claim to proceed. *Id*. at 1134.[3]

Here, Plaintiff Fernandez's alleges that she merely failed to comply with a lawful police order to "move back" and was then thrown to the ground and arrested. She has not challenged the lawfulness of her arrest *per se*, but rather has alleged that excessive force was applied to her during the course of her arrest. This was undoubtedly the type of "continuous transaction" discussed in *Yount* and *Hooper*. Plaintiff Fernandez admits she failed to comply with the officer's lawful order to "move back." This "resist[ing], delay[ing], or obstruct[ing]" of the officer's lawful order does not lose its character as a violation of § 148(a)(1) if that officer (or another) used excessive force to arrest Plaintiff Fernandez for failing to comply with the order. To hold otherwise would mean that an officer could use unlimited force

---

[3] Defendant cites *People v. White*, 101 Cal. App. 3d 161 (1980), and *Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127, 1133-34 (C.D. Cal. 1999), for the proposition that "where there is excessive force used by an officer[s] in effecting an arrest for, among other things, a violation of Penal Code section 148, the arrest is unlawful. Thus, proof that defendant Buehler used excessive force on plaintiff Fernandez herein would necessarily imply that he, as the 'victim' officer names in the corresponding criminal charge upon which plaintiff Fernandez has been convicted was not engaged in the lawful performance of his duties during that arrest, and that consequently, plaintiff could not have violated Penal Code 148." Doc. 42 at 10.

    *White* concerned a direct challenge to the criminal conviction for resisting arrest of an individual who maintained she resisted arrest only to defend herself against the use of excessive force. *White*, 101 Cal. App. 3d at 167. The conviction was reversed because the trial court failed to explain that an essential element of a § 148 resisting arrest charge is that the arresting officer was engaged in the lawful performance of his duties. *Id*. at 166-67. Because the use of excessive force during an arrest is unlawful, the jury should have been informed that if they found the arrest to be made with excessive force, the defendant should be found not guilty. *Id*. at 167.

    *Nuno* concerned an excessive force claim brought by an individual who pled nolo contendere to a § 148 charge. 58 F. Supp. 2d 1127. *Nuno* relied upon *White* to conclude that *Heck* barred the arrestee's Section 1983 claim because "plaintiff's allegations that he was subjected to excessive force during his arrest, if proven, would necessarily imply the invalidity of his obstruction of a peace officer conviction." *Id*. at 1133. But, if any such blanket rule ever existed in this Circuit, it was qualified by the Ninth Circuit in *Hooper*, which clearly held that if the § 148 conviction and the excessive force were based upon different actions, *Heck* did not bar the excessive force claim. It is *Hooper*, not *Nuno*, which controls.

10

in the course of subduing an individual for failure to comply with a lawful order, a result that was specifically rejected in Yount. *Yount*, 43 Cal. 4th at 899 (finding that broadly applying Heck would "severely diminish the protections available to those subject to arrest" because "[i]t would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted—and be shielded from accountability under civil law—as long as the prosecutor could get the plaintiff convicted on a charge of resisting.").

Defendants' motion to dismiss Fernandez's First Cause of Action against Defendant Buehler is DENIED.

**C.**   **Second Cause of Action for Battery by Fernandez Against Defendant Buehler.**

The Second Cause of Action alleges that by using excessive force against Plaintiff Fernandez, Officer Buehler committed battery.  FAC ¶¶ 23-24. Defendants move to dismiss, citing *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1406 (2002), for the proposition that a plaintiff convicted of resisting or obstructing a peace officer under California Penal Code § 148 may not maintain an action for battery based upon use of excessive force during an arrest without first obtaining relief from his or her § 148 conviction. But, *Yount*, a California Supreme Court decision issued in 2008, makes it crystal clear that when a § 1983 claim is not barred by *Heck*, a parallel state law claim for battery may proceed. *Yount*, 43 Cal. 4th at 902.

Defendants' motion to dismiss Fernandez's battery claim against Defendant Buehler is DENIED.

**D.**   **Third Cause of Action for Excessive Force Against Defendant Souza.**

In the Third Cause of Action, Plaintiffs claims that while Plaintiff Fernandez lay on the front lawn with her hands handcuffed behind her back, Defendant Officer Souza "held a police canine on a leash within a few inches of her face where it threatened to attack and maul Fernandez while she lay helpless on the ground, screaming loudly and in fear of her life." SAC ¶ 26. Plaintiffs further allege that the "canine was barking and growling at Fernandez very aggressively and was lunging at her very near

11

her face." *Id.* Defendants move to dismiss this claim on the ground that "[t]he SAC is unclear as to how Officer Souza's use of the police dog constitutes excessive force" in part because the SAC "contains no allegations that Officer Souza or his police dog applied force to Ms. Fernandez'[s] person." Doc. 42 at 12.

The Ninth Circuit addressed this issue in its August 2013 decision in this case, holding:

> The district court properly dismissed the First Amended Complaint as against Officer Souza. The vague allegation that Officer Souza held a police dog near Plaintiff Fernandez's head while she lay handcuffed on the ground is inadequate to state a claim for excessive force, battery, or a violation of California Civil Code §§ 51.7 and 52.1. It is possible, however, that Plaintiffs' allegation could be supplemented with more detail to support cognizable claims against Officer Souza. *See Mendoza v. Block*, 27 F.3d 1357, 1361–62 (9th Cir. 1994) (holding that use of a police dog in a § 1983 suit is subject to excessive force analysis); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014–15 (9th Cir. 2002) (holding viable excessive force claim based upon pointing of a gun at suspect's head at close range).

*Rodriguez*, 2013 WL 3958459,*2. The Ninth Circuit's parenthetical citations are important. In *Robinson*, the Ninth Circuit clearly held that an arrestee stated a claim for excessive force by alleging that a police officer's brandished a firearm at his head at close range. *Robinson*, 278 F.3d at 1013-15. This, coupled with *Mendoza*, which held that the use of a police dog is subject to a traditional excessive force analysis, is a clear indication that the Ninth Circuit would entertain an argument that threatening an arrestee with attack by a police dog could constitute excessive force.

The allegations in the First Amended Complaint were sparse, asserting only that "Officer SOUZA held a police dog next to [FERNANDEZ'S] head for no reason, causing FERNANDEZ to suffer severe emotional distress." Doc. 16 at ¶ 17. The allegations in the SAC are more detailed and suggest and immediate and serious threat to Fernandez's person. For purposes of a motion to dismiss, this is sufficient. Whether this claim would survive a motion for summary judgment on qualified immunity grounds is a question for another day, as the issue of qualified immunity has not yet been raised.

Defendants' motion to dismiss the Third Cause of Action is DENIED.

12

**E.        Fourth Cause of Action for Assault Against Defendant Souza.**

The Fourth Cause of Action, asserted by Plaintiff Fernandez against Defendant Souza and the City of Modesto, alleges that Officer Souza committed the tort of assault by threatening Fernandez with his police dog. SAC ¶ 31. The elements of a civil cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm. *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 668-69 (2013).

Defendants move to dismiss on the ground that the SAC fails to state a claim for assault against Defendant Souza because the SAC does not allege Defendant Souza acted with the requisite intent. Doc. 42 at 12-13. This improperly elevates form over substance. In practice, "a complaint ... must contain either direct or <u>inferential</u> allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis added). The SAC need not directly allege Souza "threatened to touch plaintiff in a harmful or offensive manner." Such intent may be inferred from the facts that are alleged in the SAC. Such an inference may be easily drawn from the SAC, which alleges that Defendant Souza "held a police canine on a leash within a few inches of [Fernandez's] face where it threatened to attack and maul Fernandez while she lay helpless on the ground, screaming loudly and in fear of her life." SAC ¶ 26. Plaintiffs further allege that the "canine was barking and growling at Fernandez very aggressively and was lunging at her very near her face." *Id.* This is sufficient to infer that Defendant Souza was threatening to use his police dog to touch Fernandez in a harmful or offensive manner.[4]

---

[4] Plaintiff "concedes that her claim fails to state all the elements of [a] tort action for assault…" Doc. 43 at 19. But this is not, as Defendants suggest, a concession that the claim should be dismissed. Rather, Plaintiff is merely conceding that the SAC does not contain language that directly alleges all of the elements. As discussed above, such direct allegations are not

Defendants' motion to dismiss the Fourth Cause of Action is DENIED.

**F.**   **Fifth Cause of Action.**

    **1.**   **California Civil Code § 51.7.**

The Fifth Cause of Action, brought by Plaintiff Fernandez against Defendant Souza, is captioned "Violation of Civil Rights – Cal. Civil Code § 51.7 & 52.1." California Civil Code § 51.7, the Unruh Civil Rights Act, codifies the "right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." California Civil Code § 51(b) applies the Unruh Act to violence committed on account of "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation…," while § 51(e) further defines these terms. The SAC contains no allegations that even arguably suggest Plaintiff Fernandez was victimized because of any characteristic listed above. Plaintiffs do not oppose dismissal of this aspect of the Fifth Cause of Action.

Accordingly, Defendants' motion to dismiss any California Civil Code § 51.7 claim contained within the Fifth Cause of Action is GRANTED.

    **2.**   **Excessive Force in Violation of California Civil Code § 52.1.**

The Fifth Cause of Action also alleges that by threatening Fernandez with deployment of the police canine, Defendant Souza violated Ms. Fernandez's right to be free from unreasonable force or the threat of unreasonable force, as protected by the Fourth Amendment, in violation of California Civil Code § 52.1.

California Civil Code Section 52.1, known as the California Bane Act, addresses civil actions for protection of rights and remedies for violations of protected rights:

    (a) If a person or persons, whether or not acting under color of law, interferes by threats,

required under federal pleading standards.

intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured....

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages ...

A section 52.1 plaintiff must demonstrate that the constitutional violation "occurred and that the violation was accompanied by threats, intimidation or coercion within the meaning of the statute." *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007).

Defendants cite *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 953, 1:09-cv-01176 AWI MJS (E.D. Cal. 2011), which held that "in order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied." In so holding, the district court in *Rodriguez* relied upon a series of California cases, including *Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998), and *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004). The legal landscape has evolved since *Rodriguez*, including the more recent decision in  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). An April 2013 Northern District of California decision thoroughly discusses *Shoyoye* and its precursors, and explains why they should not be read as requiring a separate showing of coercion:

Bane Act liability extends only to rights violations accompanied by "threats, intimidation, or coercion." *See* Cal. Civ. Code § 52.1; *Venegas*,

32 Cal.4th at 843, 850–51 (Baxter, J. concurring) (characterizing burden of showing "threats, intimidation, or coercion" as minimal: "it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component").

Defendants here argue that, to adequately allege a Bane Act violation, Plaintiffs must allege "threats, intimidation or coercion" separate and independent from the wrongful conduct constituting the rights violation, citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 961 (2012). In *Shoyoye*, a computer error resulted in the unlawful detention of a prisoner that had been ordered released. The *Shoyoye* court held that "the statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." That court made clear that the basis of its holding was that plaintiff's evidence

> showed only that County employees were negligent in assigning to Shoyoye a parole hold in the computer system, and in failing to detect the error during the subsequent quality control procedure.... Any intimidation or coercion that occurred was simply that which is reasonable and incident to maintaining a jail.

*Id*. Distinguishing [V]*enegas*, the *Shoyoye* court observed that, in the former case, probable cause "eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights," whereas in the latter, "[t] he coercion was not carried out in order to effect a knowing interference with Shoyoye's constitutional rights." *Id.* Defendants read *Shoyoye* to create a requirement in all Bane Act cases that constitutional interference must be accompanied by "threats, intimidation, or coercion" separate and apart from the rights violation. Although "federal district courts interpreting *Shoyoye* continue to disagree about its significance," *Cardoso v. Cnty. of San Mateo*, 2013 WL 900816 (N.D. Cal. Jan.11, 2013), this Court agrees with other courts holding that, at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and that *Shoyoye* applies only when the conduct is unintentional. *See, e.g., Bass v. City of Fremont*, 2013 WL 891090 (N.D.Cal. Mar.8, 2013).

In *Bass*, the court sustained a Bane Act claim where the plaintiff's allegedly unconstitutional "detention and arrest resulted from the officers' action, rather than their inaction." The court concluded that "*Shoyoye* is best viewed as a carve-out from the general rule stated in *[V]enegas*. In *Shoyoye*, the plaintiff's overdetention resulted from the negligent inaction of administrators, whereas in *[V]enegas*, the defendant officer engaged in a series of actions involving 'threats, intimidation, or coercion' that resulted in the plaintiff's unreasonable seizure and wrongful arrest." *Id.* at * 6–7. *See also Holland v. City of San Francisco*, 2013 WL 968295 (N.D. Cal. Mar.12, 2013) (rejecting Defendants' *Shoyoye* argument because

16

plaintiff alleged intentional, not unintentional, interference with constitutional rights); *Skeels v. Pilegaard*, 2013 WL 970974, at *4 (N.D. Cal. Mar.12, 2013) (distinguishing *Shoyoye* because plaintiff's alleged harms "were not brought about by human error, but rather by intentional conduct, conduct which could be reasonably perceived as threatening, intimidating, or coercive"). *See also Cardoso*, 2013 WL 900816, at * 1 (N.D. Cal. Jan.11, 2013) (denying motion to dismiss based on *Shoyoye* because plaintiff's Bane Act claim "may turn on details about the alleged application of excessive force—details which are unavailable at this early stage in the litigation").

*M.H. v. Cnty. of Alameda*, 2013 WL 1701591 (N.D. Cal. Apr. 18, 2013).

*M.H. v. County of Alameda* stands for the proposition that where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force. This Court previously has applied this rule to claims of excessive force. *Dillman v. Tuolumne Cnty.*, 2013 WL 1907379, 1:13-cv-00404 LJO SKO (E.D. Cal. May 7, 2013) (denying motion to dismiss excessive force claim on the ground that plaintiff did not allege coercion independent of the use of force).

In its July 2013 decision in *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013), the California Court of Appeal addressed *M.H. v. County of Alameda*, agreeing in part with its reasoning, but qualifying the scope of its holding. The plaintiff in *Bender* alleged he had been falsely arrested and then subjected to unreasonable force by the arresting officers. *Id.* at 974-75. After a jury found for plaintiff, defendants argued on appeal that the Bane Act does not apply to Fourth Amendment violations because coercion is inherent in any unlawful seizure. *Id.* at 976. The Bender Court ducked this broader question, reasoning:

> Coercion is, of course, inherent in any arrest, lawful or not. But we need not weigh in on the question whether the Bane Act requires "threats, intimidation or coercion" beyond the coercion inherent in every arrest, or whether, when an arrest is otherwise lawful, a Bane Act claim based on excessive force also requires violation of some right other than the plaintiff's Fourth Amendment rights. Where, as here, an arrest is unlawful and excessive force is applied in making the arrest, there has been coercion "independent from the coercion inherent in the wrongful detention itself" (*Shoyoye, supra*, 203 Cal.App.4th at p. 959)—a violation

17

of the Bane Act.

> We emphasize this is not a case involving the use of excessive force
> during an otherwise lawful arrest based on probable cause. Nor is it a case
> involving an unlawful arrest or detention, but without any coercion
> beyond the coercion inherent in any arrest. (*See Shoyoye, supra*, 203 Cal.
> App. 4th at p. 959.) Here, the Bane Act applies because there was a Fourth
> Amendment violation—an arrest without probable cause—accompanied
> by the beating and pepper spraying of an unresisting plaintiff, i.e.,
> coercion that is in no way inherent in an arrest, either lawful or unlawful.

*Id*. at 978. *Bender* directly avoids addressing the present circumstance, where Plaintiff Fernandez

concedes, as she must, that her arrest was lawful, but alleges she was the victim of excessive force

during the course of the arrest. Therefore, this Court declines to depart from the approach taken in

*Dillman*. A plaintiff bringing a Bane Act excessive force need not allege a showing of coercion

independent from the coercion inherent in the use of force.

Defendants' motion to dismiss the Section 52.1 claim on the ground that Plaintiffs have not

alleged threats, intimidation, or coercion separate from the underlying alleged constitutional violations is

DENIED.

**G.     Sixth Cause of Action for Excessive Force in Violation of California Civil Code § 52.1 Against John Doe. No. 1 and the City of Modesto.**

The Sixth Cause of Action alleges that while Fernandez was lying face-down on the ground, a

police officer whose true identity is unknown and who is therefore sued as John Doe No. 1, "struck

Fernandez repeatedly about the legs with his police issued baton." SAC ¶ 34. The SAC further alleges

that the use of the baton in this manner constituted an unreasonable use of force in violation of

California Civil Code § 52.1. Defendants move to dismiss this cause of action for the same reasons

articulated above, namely that Plaintiff Fernandez cannot maintain a Bane Act Claim because the use of

the baton by Jon Doe No. 1 did not involve a "threats, intimidation, or coercion" separate from that

inherent in the use of force. For the same reasons Defendants' motion to dismiss the Fifth Cause of

Action is denied, Defendants' motion to dismiss the Sixth Cause of Action is DENIED.[5]

**H.**     **Eighth Cause of Action for Excessive Force by Plaintiff Rodriguez Against Defendant Murphy.**

The Eighth Cause of Action, brought under § 1983, alleges that Plaintiff Rodriguez was the victim of excessive force at the hands of Officer Murphy, who deployed his canine against Plaintiff Rodriguez. The relevant factual allegations are as follows;

> RODRIGUEZ stood on the front lawn and attempted to speak to the police to find out why Alizaga had been arrested. FERNANDEZ stood on the front porch. The police ordered the crowd of people who had come outside to move back or go back inside the house. RODRIGUEZ remained on the front lawn and did not move back. Suddenly, without any warning, a police officer approached Rodriguez and grabbed him from behind in an apparent effort to place him under arrest. Rodriguez was surprised at being grabbed by a police officer but he did not offer any physical resistance. However, within moments, another officer, defendant FONTES, approached RODRIGRUEZ and Tasered him several times, a second officer, defendant MURPHY, deployed his canine against RODRIGUEZ, and a third officer, defendant ZIYA, struck RODRIGUEZ with his police issued baton. RODRIGUEZ was clearly unarmed and did not offer any physical resistance to the police at all, even after they used force against him.

SAC ¶ 15.

As was the case with Plaintiff Fernandez, Plaintiff Rodriguez entered a nolo contendere plea to a § 148(a)(1) charge. The record does not indicate that his plea was to any particular factual conduct. Again as was the case with Fernandez, Rodriguez alleges that he merely failed to comply with a lawful police order to "move back" and was then thrown to the ground and arrested. He was then subjected to additional force even though he did not resist. Rodriguez has not challenged the lawfulness of his arrest *per se*, but rather has alleged that excessive force was applied to her during the course of the arrest. This is also the type of "continuous transaction" discussed in *Yount* and *Hooper*. Rodriguez admits he failed to comply with the officer's lawful order to "move back." This "resist[ing], delay[ing], or obstruct[ing]" of the officer's lawful order does not lose its character as a violation of § 148(a)(1) if that officer (or

---

[5] Defendants offer no separate reason why the City should not be liable for the acts of John Doe No. 1 under the Bane Act.

another) used excessive force to arrest Rodriguez for failing to comply with the order.

Defendants' motion to dismiss the Eighth Cause of Action against Defendant Murphy is DENIED.

**I.      Ninth Cause of Action for Excessive Force in Violation of California Civil Code § 52.1 by Rodriguez Against Murpy.**

Defendants move to dismiss Plaintiff Rodriguez's Bane Act claim against Defendant Murphy on the same ground advanced against Plaintiff Fernandez's Bane Act claims. As this ground has been rejected and there is no basis for treating Plaintiff Rodriguez's claims differently, Defendants' motion to dismiss the Ninth Cause of Action is DENIED.

**J.      Tenth Cause of Action for Battery by Rodriguez Against Murphy.**

Defendants also move to dismiss Plaintiff Rodriguez's battery claim against Defendant Murphy. As discussed above, *Yount* establishes that when a § 1983 claim is not barred by *Heck*, a parallel state law claim for battery may proceed. *Yount*, 43 Cal. 4th at 902.

Defendants' motion to dismiss Fernandez's battery claim against Defendant Buehler is DENIED.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is:

(1)      GRANTED as to the First Cause of Action against Defendants Souza and Doe 1;

(2)      GRANTED as to any California Civil Code § 51.7 claim contained within the Fifth Cause of Action is GRANTED; and

(3)      DENIED in all other respects.

Plaintiff does not seek leave to amend as to the dismissed claims.

IT IS SO ORDERED.

Dated:   **December 9, 2013**                      **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES DISTRICT JUDGE

20